UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PANAMA CITY BEACH CONDOS,
LIMITED PARTNERSHIP, a Delaware
limited partnership,

      Plaintiff,

v.

ADJUSTERS INTERNATIONAL
COLORADO, INC., a Colorado corporation,

      Defendant.
_____/

Case No.:

## COMPLAINT

Plaintiff, Panama City Beach Condos, Limited Partnership ("Panama"), a Delaware limited partnership, sues Defendant, Adjusters International Colorado, Inc., a Colorado corporation ("Adjusters"), and alleges:

### Introduction

1.    After incurring substantial damage as a result of Hurricane Dennis (the "Hurricane"), Panama engaged Adjusters to represent it in the adjustment of its claim under a builder's risk insurance policy (the "Policy") issued by Axis Surplus Insurance Company (the "Insurer"). The Policy insured Panama's large condominium project under construction (the "Property") in the Northern District of Florida. Although the Property suffered considerable damage due to the Hurricane, a covered risk under the Policy, Adjusters' efforts to adjust the claim did not result in recovery of a single dime on

Panama's claim. Not only did Adjusters fail to recover any money from the Insurer in the adjustment of the claim, but its actions, omissions, and statements adversely impacted and created undue and costly obstacles to Panama's ability to recover from its Insurer, which was accomplished only pursuant to settlement of a judgment entered after a two-week jury trial that commenced over two years after the Hurricane struck.

2. Notwithstanding Adjusters' total failure to recover any money under the Policy as a result of its efforts and the adverse impact its actions, or lack thereof, had in Panama's ability to recover from its Insurer prior to and during the litigation process, Adjusters claims the right to recover a percentage -- as much as 10% or over $4 million -- of the judgment awarded by a jury after a two-week jury trial. Indeed, although Panama retained Adjusters as a potential witness in the trial, Panama ultimately elected not to call any representative of Adjusters as a witness at trial to advance Panama's claim due to the poor quality of Adjusters' work and the inaccurate statements and analysis attributable to Adjusters' that the Insurer sought to use against Panama.

3. Panama seeks a declaration by this Court that, among other things, Adjusters in not entitled to recover a percentage of the judgment ultimately entered pursuant to a jury verdict because: (a) Adjusters did not recover any amount in the adjustment of the claim under any of the purported agreements between the parties; (b) Adjusters was not a qualified business licensed to adjust claims in Florida or authorized to do business in the state of Florida; (c) any purported contract to pay Adjusters a percentage was limited to the adjustment process, which contract was superseded by a subsequent agreement to act as a consultant in the litigation after Adjusters failed to

successfully adjust the claim; and (d) Adjusters breached any purported agreement or agreements by failing to perform services required to successfully adjust the claim or advance Panama's interests or provide value to Panama. Finally, Panama seeks a determination that any purported interest in the proceeds received by Panama pursuant to the satisfaction of the jury verdict are inferior to the secured recorded interest of Panama's mortgagee – who had a security interest in the insurance proceeds recorded long before Hurricane Dennis ever reached the Panama City Beach Coast.

### Jurisdiction and Venue

4. Panama is a Delaware limited partnership with its principal place of business in Bay County, Florida and whose partners are Delaware and Florida entities.

5. Adjusters is a Colorado corporation that conducted business in Bay County, Florida, and whose principal place of business is in Colorado.

6. The amount in controversy exceeds the sum or value of $75,000, exclusive of attorneys' fees, interest and costs.

7. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

8. Because a substantial part of the events or omissions giving rise to Panama's claim occurred in this judicial district, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

9. The Court has authority to grant declaratory and monetary relief pursuant to 28 U.S.C. §§ 2201(a) and 2202.

## General Allegations

*The Property*

10. Panama is the developer of a thirty-one story residential condominium that at all times material hereto was under construction at 16819 Front Beach Road, Panama City Beach, Florida (the "Property").

11. On January 7, 2005, Panama executed a Mortgage and Security Agreement (the "First Mortgage") in favor of Regions Bank (the "Mortgagee"), granting Mortgagee a first priority security interest in the Property, including a security interest in "insurance proceeds . . . and all proceeds, claims, causes of action and recoveries arising on account of any damage to . . . or for any loss . . . of the Property." The First Mortgage required Panama to obtain a builder's risk insurance policy covering the Property and listing the Mortgagee as a loss payee.

12. The First Mortgage was recorded on January 10, 2005, in Official Records Book 2550, Page 331, of the Public Records of Bay County, Florida. The First Mortgage provided, in relevant part, that:

> Mortgagor [Panama] hereby directs all insurers under such policies of insurance to pay all proceeds payable there under directly to Lender. Without limiting the foregoing, Mortgagor shall cooperate fully with Lender in obtaining for Lender the benefits of any insurance or other proceeds lawfully or equitably payable to Lender in connection with the transactions contemplated by this Agreement.

13. On January 10, 2005, Panama executed a Mortgage Modification and Security Agreement (the "Mortgage Modification") in favor of the Mortgagee, which reaffirmed the first priority security interest in all insurance proceeds received pursuant to

the Policy or as a result of litigation from the Insurer and contained identical provisions to the First Mortgage regarding builder's risk insurance and loss payee information.

14. The Mortgage Modification was recorded in Official Records Book 2576 at Page 907 of the Public Records of Bay County, Florida, on March 11, 2005.

15. In accordance with the First Mortgage and Mortgage Modification, Panama purchased the Policy -- Builder's Risk Policy No. EAF11319-01 – issued by the Insurer for the period December 31, 2004 to December 31, 2005.

16. The Policy insured coverage for damages to the Property caused by, among other things, flood and wind, and other causes of loss not specifically excluded under the Policy. In addition, the Policy covered certain specified administrative costs ("Extra Expenses").

17. Pursuant to the terms of the First Mortgage and Mortgage Modification, the Mortgagee was to be a "Loss Payee" under the Policy.

### *Hurricane Dennis Strikes Bay County, Florida*

18. On July 10, 2005, Hurricane Dennis struck the Florida coast as a Category 3 hurricane. The high wind gusts, storm surges, and flooding incident to the Hurricane inflicted substantial damage on the Property. The interior of the Property sustained severe damage, as the winds and water caused deterioration and corrosion of the metal stud framing. The Hurricane also delayed the original completion date of the Property by a significant period of time, resulting in additional Extra Expenses to Panama.

19. On July 20, 2005, Panama promptly and properly notified the Insurer of the losses covered by the Policy and made a written demand for payment including, but not limited to, demolition and removal costs, security services, and repair costs.

*Panama Retains Adjusters to Adjust its Claim*

20. On July 22, 2005, Panama, inexperienced in the adjustment of insurance claims and faced with substantial damages to the Property as a result of Hurricane Dennis, retained Adjusters as its public adjuster to adjust its claim with the Insurer.

21. Panama entered into a written services agreement (the "Services Agreement") whereby Panama agreed to pay Adjusters "10% of the amount adjusted or otherwise recovered." The payment of a fee under the Services Agreement was predicated and contingent upon Adjusters' ability to recover money through the adjustment of Panama's claim against the Insurer.

22. Patrick Bickford ("Bickford"), in his capacity as president of Adjusters, executed the Services Agreement on Adjusters' behalf.

23. Soon thereafter, the parties orally agreed to a 5% fee (instead of 10%) as being more appropriate after a reassessment of the tremendous losses to the Property.

24. On information and belief, and unbeknownst to Panama, Adjusters was not authorized to do business in the State of Florida and was not a qualified business licensed pursuant to Chapter 626, Fla. Stat., to adjust insurance claims as a public adjuster in the State of Florida

25. On August 3, 2005, Bickford traveled to the Property with GAB Robins, the independent adjuster assigned to the claim by the Insurer, with the stated purpose of

ascertaining first-hand the extent of the damage and the potential coverage available to Panama under the Policy. Bickford, however, made no efforts to document or survey the losses sustained to the Property as a result of Hurricane Dennis by way of videotape or photograph upon visiting the site.

26. Rather, Bickford assigned the task of surveying the Property with the Insurer's independent adjuster to an employee of Adjusters -- an unlicensed and unqualified individual who failed to document covered losses and, as the Insurer would later allege at trial, prepared documents in concert with GAB Robins in which the two adjusters substantially agreed to all of the damages covered under the Policy. In fact, the unqualified and unlicensed individual never read the Policy or had any reasonable working understanding of the coverage issues or causes of loss, and whose lack of experience and knowledge resulted in substantial loss of time and money to Panama, and created needless obstacles at trial.

27. Adjusters was plainly derelict in the performance of its duties to Panama and did not exercise reasonable care and diligence in the adjustment of Panama's claim in that, among other things, Adjusters: (i) failed to create a comprehensive written record of the covered losses or of its investigation; (ii) failed to videotape or photograph the extent of damage to the Property, including breaks to the temporary roofs, parapet walls, windows, doors, seals around the plumbing chases, and the intrusion of water and salt in the building; (iii) failed to document damage caused by rain that entered the structure through wind-damaged roofs and walls (permanent and temporary) or through unfinished and unprotected openings; (iv) improperly relied on the Insurer's adjuster to determine

the scope of the building survey for damage; (v) improperly delegated significant tasks to unlicensed or unqualified persons, who lacked sufficient knowledge or experience to adjust the claim; (vi) improperly suggested to the Insurer that the damage was caused by "sea spray", an excluded cause of loss under the Policy; and (vii) failed to submit a written estimate of the cost of repair to the Insurer.

28. On September 15, 2005, purportedly based upon Adjusters' and the Insurer's joint survey and report, the Insurer's independent adjuster forwarded to Panama an "Adjuster Summary," adjusting the covered loss for hard costs to be $1,505,112.44 — only a tiny fraction of the losses sustained to the Property, and roughly the amount of the deductible for the Policy, resulting in a zero recovery for Panama.

29. After receiving the Adjuster Summary, and in light of Adjusters' inability to successfully adjust the claim, Panama was forced to retain counsel to advance Panama's claim.

30. In order to make a serious and supportable demand for all losses covered under the Policy, Panama and its counsel engaged in a detailed investigation of the causes of loss and the amount of damage which Adjusters had failed to perform with any reasonable diligence or aptitude in its adjustment of the claim.

31. Based upon their investigation, Panama and its counsel prepared and delivered to the Insurer, at considerable expense to Panama, a comprehensive Proof of Loss, detailing the amount and extent of Panama's covered losses under the Policy sustained to the Property as a result of the Hurricane.

32. The Proof of Loss presented the total losses covered under the Policy of approximately $40 million.

33. Upon receipt of the Proof of Loss, the Insurer claimed shock and surprise, alleging that Adjusters, and specifically Bickford, never seriously presented or discussed a claim anywhere near $40 million, thereby resulting in the Insurer's assertion that it required additional months of investigation to reconsider Panama's claim.

*Panama Sues the Insurer*

34. On September 28, 2006, over a year after the Hurricane, after the Insurer refused to proceed with a scheduled examination under oath, and after Panama having received no money as a result of the adjustment of the claim, Panama sued the Insurer (the "Litigation").

35. On February 9, 2007, Panama retained Adjusters as consultants in the case due to its purported familiarity with the condition of the Property immediately after the Hurricane and purported expertise and experience in adjusting insurance claims.

36. The terms of engagement between Panama and Adjusters were set forth in a signed engagement letter (the "Engagement Letter") that Panama understood to be the only operative agreement, because Adjusters failed to recover any money in the adjustment of the claim and thus was not entitled to payment under the Services Agreement.

*The Jury Awards Panama Over $41 Million*

37. After protracted litigation and a two-week trial, on October 12, 2007, the jury returned a verdict in Panama's favor in the amount of $41,533,800.59. Panama

incurred millions of dollars in legal fees and costs to prepare the Proof of Loss and to try the case to verdict and judgment.

38.  Not only did Adjusters not contribute to the efforts that resulted in the Insurer paying Panama for losses sustained under the Policy, but at trial, Panama did not call any of the Adjusters representatives as witnesses due to the poor quality of their work and the purported admissions or representations made to the Insurer's representatives during the adjustment process, which statements were erroneous, made without proper predicate, information or a fundamental understanding of the losses sustained and the coverage insured under the Policy, and without the authority of Panama.

***Adjusters Invoices Panama for 5% of the Jury Verdict***

39.  On October 16, 2007, Adjusters served Panama with an invoice demanding 5% of the jury verdict as its fee for adjusting the claim.

40.  On October 24, 2007, the Mortgagee sent written notice to Panama confirming its first priority security interest in "all proceeds relating to the Litigation" (hereinafter referred to as "Litigation Proceeds") and demanding the direct delivery of any proceeds paid by the Insurer.

41.  On November 14, 2007, Panama responded to Adjusters unequivocally rejecting Adjusters' claim to receive a percentage of the Litigation Proceeds. Panama reiterated that the Services Agreement expired prior to the filing of lawsuit against the Insurer and that Adjusters had failed to recover any amount through the adjustment of the claim prior to the Litigation. Further, Panama emphasized in writing that Adjusters' fees

for any services rendered since the inception of the lawsuit were to be governed by the terms of the Engagement Letter, to wit:

> As for being invoiced for 5% of the amount of the jury verdict, Adjusters International must have a misunderstanding. Your commission agreement with Panama City Beach Condos has long since expired. You were unable to obtain any recovery from Axis Surplus Insurance Company as a result of your services, a condition to your receiving a percentage under that agreement. I understand your time and efforts as a Public Adjuster ceased in the latter part of 2005.
>
> The jury verdict received last month was the result of full-time litigation work that started in about January 2006, for which Panama paid millions of dollars in legal fees and costs. Your agreement with Panama does not entitle you to a commission on that jury award. Moreover, such an agreement would be contrary to Florida law concerning the compensation of expert witnesses and consultants. For that reason, a new agreement was entered in with you, the Engagement Letter effective January 2006, which also rendered ineffective the 2005 agreement.

***Panama Is Required to Pay All Litigation Proceeds to Mortgagee Pursuant to Mortgagee's Demand and Recorded Priority Security Interest Therein***

42. In January 2008, the Insurer paid $42.5 million to Panama in full and final satisfaction of the clerk's judgment entered pursuant to the jury verdict plus a release by Panama of its claim against the Insurer for bad faith.

43. On January 23, 2008, the Insurer wired the Litigation Proceeds to Panama's counsel's trust account, and pursuant to the Mortgagee's written demand and Panama's instructions all of the Litigation Proceeds were immediately wired to the Mortgagee. Every dime of the Litigation Proceeds received from the Insurer was tendered to the Mortgagee as demanded pursuant to the Mortgagee's recorded security interest and were used for no other purpose.

*Adjusters Claims A Priority Interest in the Litigation Proceeds Superior to Mortgagee*

44. On February 7, 2008, Adjusters notified Panama's litigation counsel that it had an alleged secured interest in the Litigation Proceeds by virtue of a purported assignment in the Services Agreement. Once again, Panama advised Adjusters that it was not entitled to a percentage of the Litigation Proceeds, but that the Litigation Proceeds had been delivered immediately to the Mortgagee pursuant to its priority recorded security interest therein.

45. To add insult to injury, Adjusters subsequently increased its demand for payment from 5% to 10%, thereby contradicting its own previously written position that the parties had negotiated a reduction to 5% in the percentage Adjusters' would be entitled to be paid under the Services Agreement.

46. Adjusters provided no value in obtaining the Litigation Proceeds from the Insurer.

47. All conditions precedent to this action have been performed.

48. Panama has been required to retain the services of counsel to pursue the remedies to which it is entitled, and has agreed to pay counsel reasonable fees therefor.

## Count I – Declaratory Relief

49. Panama realleges Paragraphs 1 through 45 as though fully set forth herein.

50. Panama is in doubt regarding its rights and obligations under the Services Agreement. There is a bona fide, actual, and present dispute between Panama and Adjusters concerning: (i) Adjusters' purported entitlement to a percentage of the Litigation Proceeds, notwithstanding the fact that Adjusters recovered nothing for

Panama through its adjusting services; (ii) the amount of the commission, if any, owed to Adjusters from the Litigation Proceeds; (iii) whether the terms of compensation under the Engagement Letter superseded those under the Services Agreement; (iv) whether the payment of a percentage-based commission to Adjusters, who Panama retained as an expert witness, would violate public policy; (v) whether Adjusters' claimed interest in the proceeds, if any, is subordinate to the Mortgagee's interest; (vi) whether the fact that Adjusters was not a qualified business licensed to adjust insurance claims in Florida or authorized to do business in Florida renders the Services Agreement void and unenforceable; and (vii) the extent of damages sustained by Panama in consequence of the actions and omissions of Adjusters.

51. The case presents an actual controversy that makes declaratory relief appropriate, and is not for the purposes of giving legal advice, as Adjusters is presently demanding a percentage of the Litigation Proceeds from Panama and claiming other rights under the Services Agreement.

52. Panama is without an adequate remedy at law to remedy the harm alleged.

**WHEREFORE**, Panama respectfully requests this Court to:

(a) Declare whether Adjusters is entitled to a percentage of the Litigation Proceeds under the Services Agreement;

(b) Declare whether the percentage commission owed under the Services Agreement, if any, is five percent or ten percent;

(c) Declare whether the 5% or 10% Engagement Letter was superseded by the the Services Agreement as to Adjusters' compensation;

(d) Declare whether the payment of a percentage-based commission to Adjusters violates public policy;

(e) Declare whether Adjusters' interest in the Litigation Proceeds, if any, is subordinate to the interest of the Mortgagee;

(f) Declare the Services Agreement unenforceable because Adjusters was not a business qualified to adjust insurance claims or authorized to do business in Florida;

(g) Award Panama damages against Adjusters; and

(h) Grant such other relief as this Court may deem proper.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Panama demands a jury trial on all issues so triable.

Dated this 19th day of August, 2008.

Respectfully submitted,

_____
George N. Meros, Jr.
Florida Bar No. 263321
Allen Winsor
Florida Bar No. 016295
Andy Bardos
Florida Bar No. 822671
GrayRobinson, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
Facsimile: 850-577-3311
Email: gmeros@gray-robinson.com
       awinsor@gray-robinson.com
       abardos@gray-robinson.com

*Attorneys for Plaintiff*